IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH 1998 SESSION

FILED

June 19, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 01C01-9706-CR-00206 |
| | ) | |
| | ) | Davidson County |
| v. | ) | |
| | ) | Honorable J. Randall Wyatt, Jr., Judge |
| | ) | |
| OHMAR DESHAWN BRADEN, | ) | (Reckless homicide) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Lionel R. Barrett, Jr.
Washington Square Two
222 2nd Avenue, North
Nashville, TN 37201

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
        and
Elizabeth B. Marney
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243-0493

Victor S. Johnson, III
District Attorney General
        and
Paul DeWitt
Assistant District Attorney General
Washington Square
222 2nd Avenue, North
Nashville, TN 37201-1649

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The defendant, Ohmar Deshawn Braden, appeals as of right from his conviction[1] by a jury in the Davidson County Criminal Court for reckless homicide, a Class D felony. He received a three-year sentence as a Range I, standard offender to be served in the Davidson County Workhouse. The defendant presents one issue for review: whether the evidence was sufficient to support the jury's verdict that the defendant's conduct in shooting the victim constituted reckless homicide. We hold that the evidence was sufficient to support the conviction for reckless homicide.

This case involves the shooting death of nineteen-year-old Marcel Price on July 16, 1995, inside the house of Al Batson, a friend of both the victim and the defendant. At trial, Mr. Batson testified that on this date, he, the victim, the defendant, Vernon Bush (Mr. Batson's roommate), and some other high school friends were at Mr. Batson's house drinking and reminiscing over their high school days. He stated that they planned to go to a friend's birthday party. He said that he saw the defendant with a .38 revolver before leaving for the party. Mr. Batson testified that he and the victim returned to his house after leaving the party approximately two hours later. He said that about five to ten minutes later, the defendant came back. Mr. Batson said that someone had driven the defendant and Mr. Bush to his house. Mr. Batson said that he thought that the defendant was going to get his car and leave. He said that the defendant began talking to him and the victim. Mr. Batson described the defendant as being hyper. He stated that while he and the victim were sitting in the living room, the defendant took the .38 revolver out of his pocket and tossed it onto the couch where he was sitting. Mr. Batson said that he jumped out of the way, fearing that the gun would

---

[1]The defendant was also convicted for unlawful possession of a weapon, a Class A misdemeanor, and reckless driving, a Class B misdemeanor. He received concurrent sentences of six months for the unlawful possession of a weapon conviction and three months for the reckless driving conviction, also to be served in the Davidson County Workhouse. The defendant is not appealing these two convictions.

2

discharge, and then said, "what are you doing" or "stop." He said that the defendant sat down beside Mr. Batson, opened the chamber of the gun, and showed that it was empty.

Mr. Batson testified that the defendant stood up and continued talking. He said that the defendant then pulled a .357 revolver out of his right back pocket and fired it. Mr. Batson testified that he did not see the defendant pointing the gun at anyone or waving it, because he was walking out of the living room when he heard the shot. He then saw the victim raise up and heard the victim say, "Oh, Bill," referring to the defendant's high school nickname. Mr. Batson then realized that the victim, who was sitting in a chair, had been shot. He stated that the victim did not have a gun and that the victim did not make a sudden movement to cause the defendant to react as he did. Mr. Batson said that he had not seen the defendant with the .357 revolver earlier.

Mr. Batson said that he and the defendant put the victim in Mr. Batson's truck, and he drove speedily to Baptist Hospital, where the victim died. Mr. Batson testified that he heard the defendant say, "I'm on my way," and he believed that the defendant would try to follow him. He testified that there had been no disagreement between the victim and the defendant that night, and that he had never observed a serious quarrel between them. Mr. Batson said that the defendant did not smoke anything and that he did not appear to be intoxicated when he came into the house. In a tape-recorded interview with Joe Jones, the investigator for the district attorney's office, Mr. Batson said, "I think it was an accident." Mr. Batson estimated that he and the defendant drank approximately one can of beer that night. He said that the victim had more to drink than him. Mr. Batson stated that he had smoked some marijuana also, but that the defendant had not used any. He testified that he did not believe that the defendant was under the influence of alcohol or drugs.

3

Officer Richard Moore of the Metro Nashville Police Department testified that he saw the defendant traveling at an extremely high rate of speed, weaving in and out of traffic. Officer Moore said that he could not pursue the defendant's car because he had a prisoner with him, so he broadcast a description over the police radio. After dropping the prisoner off, he searched and found the defendant's car with two or three police cars surrounding it. He arrested the defendant for reckless driving. Officer Moore also testified that the defendant told them that he was trying to get to the hospital because one of his friends had been shot. Officer Moore said that during the search of the vehicle, Officer Garret found two pistols: the .38 was unloaded, but the .357 had two live rounds in the cylinder and one spent round in the cylinder. Officer Moore said that the defendant did not appear to be intoxicated and that he did not smell alcohol on the defendant.

Officer Freddie Garrett of the Metro Nashville Police Department heard over the radio Officer Moore's description, saw the defendant's car, and stopped it. Officer Garrett said that the defendant jumped out of the car and said that he was looking for Vanderbilt Hospital. He said that the defendant was excited and had blood on his clothing. Officer Garrett said that he found the two guns under the front driver's seat.

Vernon Bush, Jr., Mr. Batson's roommate, testified that he was standing outside talking to a neighbor when he heard a loud noise like a gunshot and then saw the victim and Mr. Batson come out of the house. He said that he saw blood coming from the victim's shoulder. Mr. Bush testified that Mr. Batson drove the victim to the hospital in Mr. Batson's truck and that he and the defendant got into the defendant's car to try to follow. He testified that they lost sight of Mr. Batson's truck and decided to go to Vanderbilt Hospital. Mr. Bush said that he was there to look for Mr. Batson and the victim and was unaware of the guns in the car. He testified that shortly thereafter, the

4

defendant's car was pulled over by the police. Mr. Bush said that he was arrested for possession of a weapon and aggravated assault but that the charges were dropped after meeting with the prosecutor and agreeing to testify truthfully.

Homicide Detective Johnny Lawrence identified the guns discovered inside the car and testified that the .357 Cobra is a double-action weapon requiring eight to fifteen pounds of pressure to pull the trigger when the hammer is down. Mr. Lawrence also testified that the victim's wound was fairly large and that the angle of the shot showed that it went towards the center of the chest.

The parties stipulated to the autopsy report prepared by Dr. Ann Bucholtz, the Davidson County Medical Examiner. The report states that the bullet entered the victim's left upper chest near the shoulder. It also states that the victim died as a result of the gunshot wound to the chest.

The defendant challenges his conviction for reckless homicide, arguing that the killing was accidental and not a result of his reckless conduct. The state responds that the evidence is sufficient to support the jury's verdict of guilt beyond a reasonable doubt. We agree.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence, but presume that the jury has resolved all conflicts in the testimony and drawn all rational inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

5

Pursuant to T.C.A. § 39-13-215(a), "Reckless homicide is a reckless killing of another." Under T.C.A. § 39-11-106(a)(31), "reckless" is defined as:

> act[ing] recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

When viewed in the light most favorable to the state, the proof establishes that the defendant recklessly killed the victim. While talking to the victim and Mr. Batson, the defendant pulled out a gun and threw it onto the couch. The defendant then sat down on the couch, opened the barrel, and showed Mr. Batson that it was empty. He stood up again, pulled out another gun that was loaded, and shot the victim.

Shooting a gun in a room with two persons present and failing to ensure that it is pointed in a safe direction are substantial and unjustifiable risks that death will occur. The defendant was aware of the risk of death because he first threw another gun onto the couch, scaring Mr. Batson who was sitting there, and then showed him that the gun was empty. The defendant then jumped up and pulled out another gun, shooting the fatal blow to the victim. Although the defendant may not have intended to hurt the victim, he deliberately used eight to fifteen pounds of pressure to pull the trigger. He consciously disregarded the risks of hurting or killing one of the other persons in the room. Shooting a gun in a room with occupants is a gross deviation from the standard of care that an ordinary person would exercise. Under these circumstances, we conclude that a rational juror could have found the defendant guilty of reckless homicide beyond a reasonable doubt.

In consideration of the foregoing and the record as a whole, we affirm the trial court's judgment of conviction.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
David H. Welles, Judge


_____
Joe G. Riley, Judge